T.C. Memo. 1999-309


UNITED STATES TAX COURT


LARRY L. SATHER, DONOR, ET AL.,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 22141-97, 22142-97,  Filed September 17, 1999.
            22143-97, 22144-97,
            22145-97, 22146-97,
              469-98,   470-98,
              471-98.


        L, J, D, and R are brothers.  L, J, and D are each
married, and each married couple has three children.  R
is not married and has no children.  L, J, D, their
wives, and R own S-co, a family-owned candy
distribution business.  They wanted to pass S-co to the
next generation in a way that would have minimal tax

---

[1]Cases of the following petitioners are consolidated
herewith:  Sandra Sather, docket No. 22142-97; John R. Sather,
docket No. 22143-97; Kathy J. Sather, docket No. 22144-97; Duane
K. Sather, docket No. 22145-97; Diane R. Sather, docket No.
22146-97; Duane K. Sather Irrevocable Trust, docket No. 469-98;
Larry L. Sather Irrevocable Trust, docket No. 470-98; and John R.
Sather Irrevocable Trust, docket No. 471-98.

consequences. L, J, D, and their wives each made transfers of S-co stock to their own children and gifts to each of their nieces and nephews, on the same date and in equal amounts. The transfers to the nieces and nephews were just under the $10,000 annual exclusion per donee of sec. 2503(b), I.R.C., and each donor claimed nine annual exclusions (three for their children and six for the nieces and nephews). After the transfers, each niece and nephew was left with the same amount of S-co stock from his and her aunts and uncles. On the same date, R also made gifts of S-co stock in equal amounts to L, J, D, their wives, and his 9 nieces and nephews.

Held: Under the reciprocal trust doctrine, L and J (and their wives K and S) are treated as the donors of the stock that each of his or her children ultimately received from his or her aunts and uncles, and each donor is entitled to three annual exclusions under sec. 2503(b), I.R.C. R's unilateral gifts have no effect on the reciprocal nature of the gifts by the other donors. Held, further, the accuracy-related penalty under sec. 6662(a), I.R.C., is not sustained as to L and J and is sustained as to K and S.

Richard M. Colombik and Mark E. Menacker, for petitioners.

Donna C. Hansberry, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge: These cases are before the Court consolidated for trial, briefing, and opinion. Respondent determined the following deficiencies in gift tax and accuracy-related penalties:

| Donor | Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|---|---|---|---|
| Larry L. Sather (Larry) | 1993 | $9,915 | $1,983 |
| Sandra Sather (Sandra) | 1993 | 22,184 | 4,437 |
| John R. Sather (John) | 1993 | 9,678 | 1,936 |
| Kathy J. Sather (Kathy) | 1993 | 22,160 | 4,432 |
| Duane K. Sather (Duane) | 1993 | 9,679 | 1,936 |
| Diane R. Sather (Diane) | 1993 | 22,170 | 4,434 |

Before trial, respondent conceded the deficiencies and accuracy-related penalties as to petitioners Duane and Diane due to expiration of the period of limitations.

Respondent also determined the following trusts were liable as transferees for unpaid gift tax and penalties relating to gifts made by the following donors:

| Transferee | Donor | Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|---|---|---|---|---|
| Duane K. Sather Irrevocable Trust (Duane Trust) | Diane | 1992 | $22,190 | $4,438 |
| Larry L. Sather Irrevocable Trust (Larry Trust) | Kathy | 1992 | 22,190 | 4,438 |
| John R. Sather Irrevocable Trust (John Trust) | Sandra | 1992 | 22,190 | 4,438 |

After concessions by the parties, we decide the following issues:

1.  Whether certain gifts of stock in 1992 and 1993 by Larry, Kathy, John, Sandra, and Diane in trust for the benefit of their respective nieces and nephews were, in substance, gifts by each of them to his or her own children.  We hold they were.

2. Whether the Larry Trust, the John Trust, and the Duane Trust are liable as transferees for the unpaid 1992 gift tax and penalties owing by Kathy, Sandra, and Diane. We hold they are.

3. Whether Larry, Kathy, John, Sandra, and Diane are liable for the accuracy-related penalty under section 6662(a) as determined by respondent. We hold Larry and John are not and Kathy and Sandra are.

Section references are to the applicable versions of the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference. Sathers, Inc. (Sathers), is a candy distribution business that has been in business since 1946. Since its inception, Sathers has been owned directly or indirectly by the Sather family. For at least the past 10 years, Neil Kaplan (Kaplan), a certified public accountant, has served as accountant for Sathers, and Nancy Bender-Keller (Bender-Keller), an attorney, has been its counsel. Kaplan worked as an accountant for more than 30 years. His experience includes employment at the Internal Revenue Service, and he was previously a partner in the tax department of Deloitte & Touche.

Larry, John, Duane, and Rodney Sather (Rodney) are brothers (the brothers). Larry is married to Kathy, John is married to Sandra, and Duane is married to Diane. Each of the married couples has three children.[2]

The brothers all received their stock in Sathers from their parents, who started the company. The brothers similarly desired to pass Sathers to the family's next generation, and, in 1991, the brothers met with Kaplan to discuss how this could be accomplished with minimal tax consequences. Kaplan conferred with Bender-Keller and, after several discussions between one or more of the brothers and Kaplan, the following occurred. In 1991, Larry created the Larry Trust with his three children as beneficiaries and Rodney as the trustee, John created the John Trust with his three children as beneficiaries and Rodney as Trustee, and Duane created the Duane Trust with his three children as beneficiaries and John as the Trustee. The brothers and their respective wives then made the following transfers of Sathers stock on December 31, 1992.

1992 Reported Gifts

Larry and Kathy

Larry transferred: (1) To each of his three children into the Larry Trust, 344.3 shares of Sathers stock valued at $75,378

---

[2]With respect to any one married couple, we refer to the children of the other two couples as the nieces and nephews.

per gift, and (2) to each of his six nieces and nephews into the John Trust and the Duane Trust, 45.6 shares of Sathers stock valued at $9,997 per gift.

Kathy transferred: (1) To each of her three children into the Larry Trust, 45.6 shares of Sathers stock valued at $9,997 per gift, and (2) to each of her six nieces and nephews into the John Trust and the Duane Trust, 45.6 shares of Sathers stock valued at $9,997 per gift.

### John and Sandra

John transferred: (1) To each of his three children into the John Trust, 347.3 shares of Sathers stock in trust valued at $76,035 per gift, and (2) to each of his six nieces and nephews into the Larry Trust and the Duane Trust, 45.6 shares of Sathers stock valued at $9,997 per gift.

Sandra transferred: (1) To each of her three children into the John Trust, 42.3 shares of Sathers stock in trust valued at $9,267 per gift, and (2) to each of her six nieces and nephews into the Larry Trust and the Duane Trust, 45.6 shares of Sathers stock valued at $9,997 per gift.

### Duane and Diane

Duane transferred: (1) To each of his three children into the Duane Trust, 342.3 shares of Sathers stock valued at $74,940 per gift, and (2) to each of his six nieces and nephews into the

Larry Trust and the John Trust, 45.6 shares of Sathers stock valued at $9,997 per gift.

Diane transferred:  (1) To each of her three children into the Duane Trust, 45.6 shares of Sathers stock valued at $9,997 per gift, and (2) to each of her six nieces and nephews into the Larry Trust and the John Trust, 45.6 shares of Sathers stock valued at $9,997 per gift.

Larry, Kathy, John, Sandra, Duane, and Diane each filed a separate gift tax return for 1992 reporting the transfers as gifts.  Each of the donors claimed nine $10,000 exclusions under section 2503(b), and each of the men claimed application of the unified credit under section 2010 for the excess amount over the allowable exclusion.  None of them reported any gift tax due for 1992.  The total value of transfers from each married couple to their nieces and nephews and the total value of property received by each niece and nephew from his or her aunts and uncles are summarized as follows:

| Transferors | Reported Value of Stock Transferred to Nieces and Nephews | Transferees | Reported Value of Stock Received from Aunts and Uncles |
|---|---|---|---|
| Larry and Kathy | $119,964 | Nephew | $39,988 |
| | | Nephew | 39,988 |
| | | Nephew | 39,988 |
| | | | 119,964 |
| John and Sandra | 119,964 | Niece | 39,988 |
| | | Niece | 39,988 |
| | | Nephew | 39,988 |
| | | | 119,964 |
| Duane and Diane | 119,964 | Niece | 39,988 |
| | | Nephew | 39,988 |
| | | Nephew | 39,988 |
| | | | 119,964 |

On January 5, 1993, the brothers and their respective wives made the following transfers.

1993 Reported Gifts

Larry and Kathy

Larry transferred: (1) To each of his three children into the Larry Trust, 70 shares of Sathers stock valued at $15,323 per gift, and (2) to each of his six nieces and nephews into the John Trust and the Duane Trust, 91.3 shares of Sathers stock valued at $19,994 per gift. Kathy transferred to each of her three children into the Larry Trust, 15 shares of Sathers stock valued at $3,283 per gift.

John and Sandra

John transferred: (1) To each of his three children into the John Trust, 69.7 shares of Sathers stock valued at $15,250 per gift, and (2) to each of his six nieces and nephews into the Larry Trust and the Duane Trust, 91.3 shares of Sathers stock valued at $19,994 per gift. Sandra transferred to each of her three children into the John Trust, 15 shares of Sathers stock valued at $3,283 per gift.

Duane and Diane

Duane transferred: (1) To each of his three children into the Duane Trust, 68 shares of Sathers stock valued at $14,886 per gift, and (2) to each of his six nieces and nephews into the Larry Trust and the John Trust, 91.3 shares of Sathers stock

valued at $19,994 per gift.  Diane transferred to each of her three children into the Duane Trust, 15 shares of Sathers stock valued at $3,283 per gift.

Larry, Kathy, John, Sandra, Duane, and Diane each filed a gift tax return wherein they reported these transfers as gifts, and each married couple elected to have all the gifts made by them treated as made one-half by each of them for gift tax purposes.  See sec. 2513.  After application of the $10,000 exclusion per donee (nine claimed by each donee), none of the donors paid any gift tax.  The total value of transfers from each married couple to their nieces and nephews and the total value of property received by each niece and nephew are summarized as follows:

| Transferors | Reported Value of Stock Transferred to Nieces and Nephews | Transferees | Reported Value of Stock Received from Aunts and Uncles |
|---|---|---|---|
| Larry and Kathy | $119,964 | Nephew | $39,988 |
| | | Nephew | 39,988 |
| | | Nephew | 39,988 |
| | | | 119,964 |
| John and Sandra | 119,964 | Niece | 39,988 |
| | | Niece | 39,988 |
| | | Nephew | 39,988 |
| | | | 119,964 |
| Duane and Diane | 119,964 | Niece | 39,988 |
| | | Nephew | 39,988 |
| | | Nephew | 39,988 |
| | | | 119,964 |

On December 31, 1992, and January 5, 1993, Rodney made gifts of Sathers stock to each of his nine nieces and nephews in equal amounts, and to Larry, Kathy, John, Sandra, Duane, and Diane in

equal amounts. Each of the gifts was worth less than $10,000, and Rodney paid no gift tax.

None of the brothers have any background in accounting or tax. Kaplan advised the brothers to make the transfers and advised them that these transfers would be nontaxable gifts. None of the brothers' wives ever met with Kaplan, and he never advised the wives. Kaplan prepared all gift tax returns at issue.

Respondent's Determinations

### Gift Tax Liability

Respondent determined that the January 5, 1993, transfers by Larry, Kathy, John, and Sandra to their respective nieces and nephews in trust were, in substance, gifts made by each donee to his or her own children in trust. Consequently, respondent determined that each donee was entitled to only three (the number of children each donee has) exemptions under section 2503(b). Respondent disallowed six of the exemptions claimed by Larry, Kathy, John, and Sandra on their 1993 gift tax returns relating to the transfers to the nieces and nephews. Respondent also determined that Larry, Kathy, John, and Sandra were liable for the accuracy-related penalty under section 6662(a).

### Donee Liability

By notice of transferee liability to the Larry Trust, the John Trust, and the Duane Trust, respondent determined the December 31, 1992, transfers of Sathers stock by Kathy, Sandra, and Diane to each of their respective nieces and nephews in trust

were, in substance, transfers to each of their own children in trust.[3] Respondent determined Kathy, Sandra, and Diane were each entitled to three exemptions under section 2503(b), and respondent disallowed the six exemptions claimed regarding transfers to the nieces and nephews. Consequently, respondent determined that the Larry Trust, the John Trust, and the Duane Trust were, as the recipients of the transferred property, liable as transferees for the unpaid gift tax liability of Kathy, Sandra, and Diane.

OPINION

We must peel away the veil of cross-transfers to seek out the economic substance of the foregoing series of transfers. Petitioners bear the burden of disproving respondent's determination as to the tax deficiencies and accuracy-related penalties. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent bears the burden of proving the elements for transferee liability. See sec. 6902(a).

Section 2501(a) imposes a tax "on the transfer of property by gift", and section 2511(a) provides that "the tax imposed by section 2501 shall apply * * * whether the gift is direct or indirect". Section 2503(b) excludes from the definition of "taxable gifts" the first $10,000 of gifts to any person during

---

[3]As to the underlying liability, respondent has never issued a notice of deficiency to any of the related donors; namely, Kathy, Sandra, and Diane.

the year.  The simultaneous, circuitous transfers of identical property to the various nieces and nephews constitute gifts by the transferors to their own children.  See, e.g., <u>Furst v. Commissioner</u>, T.C. Memo. 1962-221.  Petitioners' attempt to manufacture exclusions under a taxing statute that reaches both direct and indirect gifts is unavailing.

We are led to the inescapable conclusion that the form in which the transfers were cast, i.e., gifts to the nieces and nephews, had no purpose aside from the tax benefits petitioners sought by way of inflating their exclusion amounts.  The substance and purpose of the series of transfers was for each married couple to give to their own children their Sathers stock. After the transfers, each child was left in the same economic position as he or she would have been in had the parents given the stock directly to him or her.  Each niece and nephew received an identical amount of stock from his or her aunts and uncles and was left in the same economic position in relation to the others. This was not a coincidence but rather was the result of a plan among the donors to give gifts to their own children in a form that would avoid taxes.  We hold the number of exclusions under section 2503 is limited by the number of children in each petitioner's family.

Our conclusion is supported by the doctrine of economic substance as embodied in the reciprocal trust doctrine.  In <u>United States v. Estate of Grace</u>, 395 U.S. 316 (1969), the

decedent created a trust for the benefit of his wife and, at the same time, his wife created a trust of equal value for his benefit.  The trusts had identical terms granting the other spouse a life estate with the remainder to their children.  The Supreme Court applied the reciprocal trust doctrine which requires that where two settlors simultaneously create trusts with the same provisions and with similar property for the benefit of each other, each settlor will be considered the creator of the trust that is in form created by the other.  See id.  The Supreme Court clarified that subjective intent of the settlors is irrelevant and held the doctrine applies if the two trusts:  (1) Are interrelated, and (2) leave the settlors in approximately the same economic position as they would have been in had they created trusts naming themselves as beneficiaries. See id.; Estate of Bischoff v. Commissioner, 69 T.C. 32 (1977).

This Court and other courts have applied the principles of the reciprocal trust doctrine to gift tax cases under facts similar to those of this case, see, e.g., Schultz v. United States, 493 F.2d 1225 (4th Cir. 1974); Furst v. Commissioner, supra, and we apply those principles herein.  The gifts to the nieces and nephews are interrelated.  They are identical in type and amount and were executed at the same time.  Indeed, the gifts were all part of a plan designed and carried out by petitioners as a group.  It is clear that the purpose of the plan was for each married couple to benefit their own children.  It is also

clear that the gifts in trust left each beneficiary (the nieces and nephews), to the extent of mutual value, in the same position as they would have been in had their parents given the property directly to them. In relation to one another, the nieces and nephews all were left in the same economic position. The fact that petitioners routed the gifts to their own children through their nieces and nephews is immaterial, and we ignore that routing for tax purposes. We sustain respondent's determinations of gift tax for 1993 relating to Larry, Kathy, John, and Sandra. For the same reasons, we also agree with respondent that Kathy, Sandra, and Diane are each entitled to only three exclusion amounts under section 2503 on their respective gift tax returns for 1992.

Petitioners argue that the entire series of transactions should be respected for tax purposes because Rodney gave property on the same dates in 1992 and 1993, and he received nothing in return. Petitioners argue that application of the step-transaction doctrine mandates this result. That doctrine requires that interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction. See Commissioner v. Clark, 489 U.S. 726, 738 (1989). When the step-transaction doctrine is applied, separate steps of a transaction are collapsed into one taxable event if the steps of the series are really prearranged parts of a single transaction. See id.; Penrod v. Commissioner, 88 T.C.

1415, 1429 (1987). As we understand it, petitioners' argument is that all transfers by Larry, Kathy, John, Sandra, Duane, Diane, and Rodney, in each year, were really separate steps of a single transaction. Therefore, petitioners argue, the transaction must be viewed and taxed as a "whole", and Rodney's participation destroys the reciprocal nature of the entire transaction because he received nothing in return for his gifts.

To the extent petitioners suggest that Rodney's unilateral gift giving somehow validates the entire transaction and destroys the reciprocal nature of the gifts, we disagree. Rodney is a separate taxpayer whose gifts have not been challenged. That his gifts may have passed scrutiny does not dictate the result as to the other taxpayers. Rodney's participation in the gift giving in no way lends economic reality to the form in which the other donors structured the transfers, and his participation does not immunize the questioned transfers from application of the doctrine of economic substance or the reciprocal trust doctrine.

This leaves the issue of whether the Larry Trust, the John Trust, and the Duane Trust are liable as transferees for the unpaid gift tax and additions to tax of Kathy, Sandra, and Diane, respectively. The second sentence of section 6324(b)[4] provides

---

[4]SEC. 6324. Special Liens for Estate and Gift Taxes.

    (b) Lien for Gift Tax.-- * * * unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax

                              (continued...)

that if the gift tax is not paid when due, the donee is personally liable for the gift tax to the extent of the value of the gift.  See <u>Mississippi Valley Trust Co. v. Commissioner</u>, 147 F.2d 186, 187-188 (8th Cir. 1945), affg. a Memorandum Opinion of this Court; <u>O'Neal v. Commissioner</u>, 102 T.C. 666, 675 (1994). Section 6324(b) imposes liability at law upon a donee.  See <u>O'Neal v. Commissioner</u>, <u>supra</u>; <u>Fletcher Trust Co. v. Commissioner</u>, 1 T.C. 798 (1943) (construing the predecessor to section 6324(b)), affd. 141 F.2d 36, 40 (7th Cir. 1944). Respondent did not in this case, and is not required to, first assert  deficiencies against the donors or take other steps to collect from the donors.  See <u>Mississippi Valley Trust Co. v. Commissioner</u>, <u>supra</u> at 188; <u>O'Neal v. Commissioner</u>, <u>supra</u>. Likewise, there is no requirement under section 6324(b) that the period of limitations on assessment of tax against the donor be open at the time the notice of transferee liability is issued to the donee.  If the tax "is not paid when due", the donee is personally liable for the tax to the extent of the gift under section 6324(b).  See <u>O'Neal v. Commissioner</u>, <u>supra</u> at 676.

---

[4](...continued)
shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift. * * *

The parties stipulated that the 1992 gift tax due from Kathy, Sandra, and Diane is not paid. All elements necessary for the imposition of liability under section 6324(b) are satisfied, and we hold the Larry Trust, the John Trust, and the Duane Trust are liable as transferees for the unpaid gift tax and penalties[5] of Kathy, Sandra, and Diane, respectively.

As to the accuracy-related penalties, we first turn to whether Larry, Kathy, John, and Sandra are liable for the 1993 amounts. Section 6662(a) and (b)(1) imposes a penalty equal to 20 percent of the portion of an underpayment that is attributable to, among other things, negligence. Petitioners will avoid this penalty if the record shows that they were not negligent; i.e., they made a reasonable attempt to comply with the provisions of the Internal Revenue Code, and they were not careless, reckless, or in intentional disregard of rules or regulations. See sec. 6662(c); Accardo v. Commissioner, 942 F.2d 444, 452 (7th Cir. 1991), affg. 94 T.C. 96 (1990); Drum v. Commissioner, T.C. Memo. 1994-433, affd. without published opinion 61 F.3d 910 (9th Cir. 1995). Negligence connotes a lack of due care or a failure to do what a reasonable and prudent person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1 (1989), affd. 925 F.2d 348 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The accuracy-related penalty of section

_____

[5]Our discussion on the accuracy-related penalty is set forth below.

6662 is not applicable to any portion of an underpayment to the extent that an individual has reasonable cause for that portion and acts in good faith with respect thereto. See sec. 6664(c)(1). Such a determination is made by taking into account all facts and circumstances, including whether the taxpayer relied reasonably on a professional tax adviser. See sec. 1.6664-4(b)(1), Income Tax Regs.

Larry and John seek relief from the penalty by arguing they relied reasonably on advice from Kaplan. Reasonable reliance on the advice of counsel or a qualified accountant can, in certain circumstances, be a defense to the accuracy-related penalty for negligence. See, e.g., Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Pessin v. Commissioner, 59 T.C. 473, 489 (1972); Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968). In those cases, the taxpayer must establish: (1) The adviser had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. See Ellwest Stereo Theatres v. Commissioner, T.C. Memo. 1995-610.

In the instant case, Larry and John have used the accounting services of Kaplan for over 10 years and have always relied on Kaplan with respect to tax matters. Kaplan prepared all returns

at issue and testified he is knowledgeable on taxes and that he advised the brothers to make the reciprocal transfers. Respondent's counsel asked no questions on cross-examination. The record demonstrates that the brothers relied on that advice, and we conclude that reliance was reasonable under the circumstances. We hold that Larry and John are not liable for the accuracy-related penalty.

As to Kathy and Sandra, however, we find no such reliance. Their gift tax returns were separate from their husbands', and we must look to whether they exercised due care or whether reasonable cause existed as to their returns. Neither Kathy nor Sandra appeared for trial, and there is no evidence in this record as to what steps they took to ensure their returns were proper. Although all of the brothers testified at trial, none of them mentioned Kathy or Sandra in their testimony, and there was no suggestion that the brothers conveyed to Kathy and Sandra what transpired at any of the meetings with Kaplan.[6] We are unable to find on this record that either Kathy or Sandra relied on the advice of Kaplan or any other professional. We sustain respondent's determinations as to Kathy and Sandra.

Respondent also determined in the notices of transferee liability for 1992 that Kathy, Sandra, and Diane are liable for

---

[6]On brief, petitioners' requested findings of fact on the issue of reasonable reliance relate only to the four brothers, and there is no mention of any reliance by Kathy or Sandra.

the accuracy-related penalty.  On this record, there is similarly no evidence that reasonable cause existed or that they were not negligent when they filed their respective 1992 gift tax returns. Accordingly, we sustain respondent's determinations against the transferees, the Larry Trust, the John Trust, and the Duane Trust, as to Kathy, Sandra, and Diane's liability for the accuracy-related penalty.

In reaching our holdings herein, we have carefully considered all arguments made by the parties for a contrary result and, to the extent not discussed herein, find those arguments irrelevant or without merit.  To reflect the foregoing,

Decisions will be
entered for respondent with respect
to the deficiencies and for
petitioners with respect to the
penalties in docket Nos. 22141-97
and 22143-97; decisions will be
entered for respondent in docket
Nos. 22142-97, 22144-97, 469-98,
470-98, 471-98; and decisions will
be entered for petitioners in
docket Nos. 22145-97 and 22146-97.